And here is our next case, which is Doe v. Colgate University. May it please the Court, my name is Phil Beiler. The lawyer for Plaintiff Appellant John Doe, who seeks reversal of the District Court grant of summary judgment dismissing John Doe's complaint for Title IX discrimination. We also seek the reversal of a preclusion order as to the expert testimony of Professor Gruber. Just by way of background, very quickly, John Doe was a senior male student at Colgate with a 3.28 GPA and otherwise unblemished disciplinary record at that point, his senior year, when he was expelled 39 days short of graduation based on sexual misconduct complaints that were made right after a sexual climate forum that occurred in October of his senior year referring to events his freshman year. Discovery, we believe, has shown facts amply supporting an erroneous outcome case and that the District Court and Colgate rely on a one-sided, incomplete statement of facts that edits out that which shows you that there's gender bias. The District Court . . . Well, what you're saying is you lost. I'm sorry? You lost in the proceedings at Colgate. One-sided, you could say one-sided, but one-sided, you're either going to win or lose and you lost because the Colgate, following whatever procedures they had, came to the determination that they did. No, I mean one-sided in a different sense. I don't mean . . . Please explain. Well, yes. The biggest hurdle you have here, it seems to be, is to show gender discrimination. You're not bringing a due process challenge. You can't bring a due process. Due process relates into . . . It relates to the erroneous outcome, but you still have to show that there was gender discrimination. Absolutely. Absolutely. Absolutely. First of all, let me deal with your concern. When I say one-sided, they're not dealing with elements of the summary judgment record, not that what happened at Colgate, for example, left out of the District Court opinion and Colgate's treatment is who plaintiff is and his accounts, his accounts of what happened that night. Those matter because if you take those accounts, then you should not have had a joinder of the three complaints because there was an effective consolidation here. You should not have had a situation in which he doesn't get a fair opportunity to defend himself. He doesn't learn about the specific accusations against him until two weeks before the hearing. Let me ask you about that. He was interviewed on December 17th. Correct. The hearing was on April 7th. I read the account of his interview and it details the three complaints and it's specifically what was said by each of the three women, right? No. It doesn't? Okay. So that's a confidential appendix at 114. Doesn't it say, well, this is number one, this is number two, this is number three, this is what they said you did, did you do it? Do you say that didn't happen? No, I'm not saying that didn't happen. It was not related to a sexual misconduct complaint. The first time he- What do you think he was doing being interviewed by Brogan, who was the sexual investigator for the college? Yes. And when he met with- Was he just having coffee or why were they meeting? When he met with Brogan in December, he asked, tell me details of what was, you know, what I'm being accused of. And she said, well, that's inappropriate. Really? So he, when he wrote up his account, it was- Confidential appendix 114, I won't identify the women, but it goes the one, two, three, it has one paragraph on, two paragraphs or one of them on all three. This is what they said you did to them. You're saying that didn't happen? No, I'm not saying that didn't happen. I'm saying that when, wait a minute, there's a level of specificity, okay? And I don't want to quibble, but what John Doe said is, I did not understand until March that these were sexual misconduct complaints. At no time did Brogan, you know, explain the details, which he asked Brogan to do so. He has the meeting. They said they would also claim they were sexually abused by your client. Yes, I know. In this paragraph. Well, I understand. But that's, that is just a general statement. The specific, the specifics are what were the problem. Jane Doe 3, for example, alleged sexual abuse in the bathroom of her dorm. John Doe's story, which he wrote up, was he didn't even go into the dorm. And he goes, he gives his written statement, February 16th. Yeah. Right? So he responds to all of this. Yes. And I might add that when he gives this, when he first was interviewed with Brogan, Brogan was asked what are the details Brogan refused to give him. He is later faulted at the hearing for being inconsistent because he provided more details. He was in a position where he is thinking back what happened, doing the best he can. But he doesn't have all the details of what is in notice. One change of the current administration is that you are supposed to up front give written notice of the accusations involved in any case so that there's a fair opportunity to deal with them. That's why- When? Under the procedures when? When do you get- September 2017, the Dear Colleague letter issued by Betsy DeVos. One of the requirements is that there be notice up front, written notice up front. By the way, this is just one of a number of issues and I am looking at- You're taking up the time the way you want to take it up. No, I was responding to questions. I'm sorry. Go ahead. Our argument about gender bias, let me focus on that because that's the center of it. By the way, if Professor Gruber's testimony has been improperly excluded, and we argue in our briefs it is because it's reliable testimony. You look at her credentials. You know that she's fully qualified and the statements made about her not providing factual support are just not true. You can't say there's not evidence of gender bias. Her testimony is very helpful in understanding why there is because gender bias manifests itself in the way that the process works and how it's set up. But she says there's generally gender bias in these investigations. She doesn't say it specifically as to the Colgate investigation other than the procedures were unfair, right? No. She's written articles about this, the trauma and revisiting this, but she didn't talk to the victims here, did she? No, but she has researched extensively trauma. By the way, I do these cases. Trauma is a big, big issue in every one because it's used to rationalize inconsistencies in the statements of the complainant. It's used to justify not having cross-examination. It is what one expert calls another one, junk science though because it's a misuse and it is a part and parcel of what Gruber analyzes as the anti-rape culture and it's what it really is. There was a misuse of trauma.  At the hearing. Brogan is literally testifying, the investigator, testifying at the hearing that it was trauma that rationalizes and justifies what three years passes and they don't bring these complaints. Why there were, you know, you disregard the fact that Jane Doe 1 thought that when Jane Doe 2 and complainant were together in bed with Jane Doe 1, that it was consensual. Okay? So trauma is a key and it is part of, well, Gruber calls it trauma trope because trauma doesn't justify not recognizing the inconsistencies. Good Lord, you have- Your time is up. Would you like another minute to complete your thought? I know you had reserved a couple of minutes, Gruber. Yeah, I know. I talked a little bit more. Can I give you another minute now? We'll still give you the two minutes later. How's that? Okay. Yes, the investigation, pardon me, I have a little basal cancer. The investigation is one element and it's always a problem in these Title IX cases and Brogan, who was a former sex cop policeman, used her methods. The trouble is Title IX calls for something very different and Gruber explains this. It's inquisitorial. It is not prosecutorial. When you have the criminal law system, you have the adversary system as a safeguard here. You don't have that in Title IX. You can't have that kind of prosecutorial-minded investigation. She assumes males are guilty. She assumes females are truthful. She asks various witnesses. Well, you know, if it didn't happen, why would they say these stories? Well, there is an answer that Gruber gives, which is there was a sexual climate forum, which was a trigger for all three complaints within two days, that they're misremembering things based on a cultural understanding that has been presented to them. In the end, John Doe is put to a hearing where he has three scheduled hearings, supposedly, before the same panel, and you have error here that would at least be in a court of law because you have effective consolidation. Thank you, Mr. Byler. We'll give you two minutes later after the University. Okay. Good morning, Your Honors. May it please the Court. My name is Laura Harshbarger here on behalf of Colgate University. I want to take just a couple of seconds, if I could please, to point this Court to record evidence that disputes Mr. Byler's representation of the record. First of all, he represented that John Doe did not have notice of the allegations until March, as Your Honor correctly pointed out, in early December. In fact, December 4th, he was informed by Associate Dean for Conduct, Kimberly Taylor, that he was under investigation pursuant to the college's EGP policy, which is the policy that concerns sexual misconduct. And at pages 703 to 705 of the confidential appendix, plaintiff testified under oath that at that point he, quote, might have suspected that the Jane Does were accusing him of sexual misconduct. Further, on December 12th, 2014, at confidential appendix 114 to 117, as this Court has pointed out, at that point in time, he was told of each one of the individuals who was accusing him. He was told of the specific day and incident that was under investigation, and he was able to provide his account of those incidents. And Mr. Byler says, but he wasn't told exactly what the complainants were alleging. That's not gender bias because, Your Honors, the complainants were not told John Doe's account either. So the parties are, this is a gender bias case, and we all understand that. This Court has repeatedly said, in Title VII cases, for example, that it does not sit as a super-personnel department reviewing business decisions. There must be bias in order for this Court to have a rule. It's all the more the case when we're talking about student disciplinary proceedings, where all federal courts are loath to retry student disciplinary proceedings. There has to be gender bias. The complainants had no more access to this investigative file than John Doe did. They were given access to the file on exactly the same day. So that's the day that they learned what was in the file in terms of witnesses and investigations. That's March 27th? That is March 27th, Your Honor, 2014, correct. When was it available earlier than that? That's only 10 days before the hearing. Your Honor, it was about 10 or 11 days before the hearing. The investigation didn't conclude until shortly before that time. The policy provides for one week's advance notice. This was more advance notice. But, again, Your Honor, so we're taking a step back and we're saying is it gender bias? I'm asking more is it fair at this point. We'll get into gender. I know that's part of the equation. But is it fair to just give them the file a week before the hearing? I know his lawyer couldn't get it until a few days before the hearing. Is it fair to have the three hearings seriatim with the same panel? Is that fair? Your Honor, it is. At a minimum, it is not gender bias. In terms of this file, this file was 72 pages. John Doe claims you can't read 72 pages in 11 days. Yes, you can. John Doe didn't request to review this file until April 3rd. That's his choice. It was available to him as of March 27th. John Doe knew about these allegations. Your Honor, we just went through this, right? He knew about these exact incidents. The three hearings, though, right one after another with the same panel members. They're three separate women. They're separated by months, the incidents, even though it was years ago. How is that fair to have the same people hear them and not be influenced by the prior hearings? Your Honor, the EGP policy has a gender neutral provision in it that says that evidence of pattern of behavior that might be relevant to some issue in the case may be considered by the student disciplinary panel. So in this case, Associate Dean for Conduct Taylor concluded that they're looking at the incidents and the allegations in each case, that there was a pattern here, a pattern of John Doe finding a drunk, incapacitated female, finding a way to go back to the dorms with that young woman and then various acts of his that were similar between these three incidents. Having made that decision, Associate Dean for Conduct Kim Taylor made a practical decision. The practical decision being, under the policy, all three of these incidents may be considered when the panel is deciding responsibility for each one. So given that, under pursuit of the policy, these panel members are entitled to consider all three of these cases, there is no need for us to times three the amount of personnel it will take to adjudicate these, times three the number of times that we would have to call people together, all of which to repeat all of the same evidence. It was a practical decision, Your Honor, that was fair. And when you read the EGP panelist's decisions, it's clear, Your Honor, that they carefully considered this evidence. They deliberated over what witnesses had said. They evaluated the credibility and the demeanor of these students that were in front of them, both John Doe and the complainants. They made very rational determinations. You'll see in their testimony, they questioned some things here and there. They came up with rational determinations. And the fairness of this process, Your Honor, is made no more clear than the fact that there was a fourth damning bombshell of an anonymous complaint that arrived right before this hearing was going to take place. It alleged that John Doe had, yet again, found a way to have access to a drunk female, had disrobed her, photographed her breasts, her anal area, and her vaginal area with his phone. And Associate Dean for Conduct, Kimberly Taylor, kept that out of the hearing because she decided that would be unfair because it's an anonymous complaint and that shouldn't come in. There was more. There was another Colgate employee who provided information in the investigation that two more women... Are you citing this evidence to tell us how bad John Doe was? Or are you citing this evidence to show us how fair Dean Taylor was? I'm citing this evidence to show how fair Dean Taylor was. I've read all this. I'm sorry. At least I'm familiar with all this. Yes, sir, Your Honor. Because my point is this. If John Doe's allegations were correct, that this was a university who was out to railroad him merely because he happens to be a male human being, we wouldn't have facts like that in this record. And while Mr. Byler has told this court, we have not looked at this record holistically, that is actually an accusation that is far more true of Mr. Byler. He does not deal with these pieces of evidence that prevent any inference of gender discrimination from arising. There's also, of course, the fact that Colgate University's proceedings have resulted in very balanced outcomes. Three men expelled after allegations of sexual misconduct, but three found entirely not responsible and no discipline implemented against them at all. The remaining three could have mixed results. Responsible for the lesser charges, but maybe not more serious conduct, and not expelled. That's not a record that supports this inference that Colgate University is implementing its sexual misconduct policy in a gender-biased way to discriminate against men, assuming men are guilty. Investigator Brogan, Your Honor, Val Brogan, she twice, the record is undisputed on this point, she twice took the side of men in these cases. She investigated the cases, and she twice said they should not be held responsible because the evidence was insufficient. The court below, Your Honors, issued an incredibly comprehensive 59-page, thorough, carefully-reasoned decision looking at this evidence. This court said in Bickerstaff v. Vassar College that in order to defeat a motion for summary judgment, a plaintiff has to do more than come forward with evidence that just supports speculation or conjecture of discrimination. It has to support an inference. And this court said an inference isn't guesswork. It is a logical, reasoned conclusion that you reach after looking at the record evidence. Respectfully, Your Honor, the lower court absolutely made the correct determination that on this set of facts, and recall, John Doe has had the full opportunity for discovery. For as much as he impugns the investigation in this case, Your Honors, and for as long as we've been at this litigation, he has not come forward with one single piece of information or evidence that Val Brogan and her investigation did not uncover. All he has is an expert report that he had this court in Raskin v. Wyatt said, coming forward with an expert report is not a talisman against summary judgment. You don't shake that expert report and it wards off summary judgment. The question is, is the expert report reliable? And this court did an extensive analysis of this report to find that it did not. Mr. Byer told the court that Aya Grubber had written extensively on trauma. In his reply brief, he cites to 13 pages of one of her articles, the anti-rape culture. I commend it to you. Read those 13 pages. It espouses ideas like women pay a rape tax. That's what those 13 pages are about when they're about trauma. She has one sentence, one sentence that says that administrators use trauma to avoid questioning complainants or to kind of smooth over inconsistencies. One sentence, that one sentence cites to the 2011 Dear Colleague letter, which of course says nothing about what complainants or what administrators think or feel, and one Harvard Law Review article, similarly unsupported, that cites an anecdotal case of something that happened at Harvard. We've read your papers. Thank you. Thank you. We'll hear a couple of minutes from Mr. Byler. Thank you, Your Honor. I appreciate that. I'd like to go longer, but I can't. The gender bias case that we present, on the evidence, on the record, I've briefed in the appellant brief and devote most of the brief to it, and I go through the sexual climate forum, the sexual climate at Colgate, the training that reflected the gender bias, the investigation, and pages are spent how Brogan approached it in a gender-biased way, the consolidation decision, which I want to talk about more, the differential in treatment between complainants and lack of accommodations to John Doe because he asked for more time, wasn't given it, the gender-biased hearing where Brogan is using trauma throughout to explain away the problems of Jane Doe's testimonies. That analysis is based totally on the record. The suggestion that we haven't come forward with evidence is just false. Consolidation, supposedly based on pattern. Actually, the rules say that you only consolidate if you have the same event or set of circumstances. That's not here. And it wasn't just one month. It was six months. It was Halloween. It was Valentine's Day. It was Easter, Passover that these three events occurred. That's a long period of time. And yet it's called a pattern. You can't call it a pattern. Your time has expired. Thank you. We've got your papers as well. We'll reserve decision on this case as well. We'll take a brief recess before we take up our next argument. Do you want to say something? I was in mid-sentence. You can't decide a pattern without a gender-biased prejudgment because there's no pattern given the case, the side of the stories that John Doe gives. There's no pattern in what he says. So you have to have a gender-biased preconception in order to do consolidation. That's what I was in the middle of saying. Thank you, Your Honor. We'll be in recess for a brief recess. Court is in recess.